1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11
12

DOUGLAS E. STAGGS,

                         Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                         Defendant.

Case No. C09-5374BHS-KLS

REPORT AND RECOMMENDATION

Noted for June 18, 2010

13
14
15
16
17
18
19

        Plaintiff, Douglas E. Staggs, has brought this matter for judicial review of the denial of

his application for supplemental security income ("SSI") benefits.  This matter has been referred

to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review.

20

FACTUAL AND PROCEDURAL HISTORY

21
22

        Plaintiff currently is 49 years old.[1] Tr. 28.  He has a general equivalency diploma and

past relevant work as a caregiver, telemarketer and dishwasher. Tr. 120, 443.

23
24
25

        On December 26, 2002, plaintiff filed an application for SSI benefits, alleging disability

as of April 1, 2002, due to post-traumatic stress, anxiety, a schizoid personality disorder, major

26

_____

        [1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding
Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference
of the United States.

REPORT AND RECOMMENDATION - 1

depression, problems with concentration, short-term memory loss, and severe mood swings. Tr. 90-92, 114, 449.  His applications were denied initially and on reconsideration. Tr. 28-29, 41, 47, 449.  A hearing was held before an administrative law judge ("ALJ") on March 21, 2005, at which plaintiff did not appear, but at which a vocational expert appeared and testified. Tr. 648-53.  On May 26, 2005, the ALJ issued a decision, determining plaintiff to be capable of returning to his past relevant work, and thus not disabled. Tr. 33-37.

On January 19, 2006, the Appeals Council granted plaintiff's request for review of the ALJ's decision, and remanded the matter to the same ALJ for further administrative proceedings. Tr. 39-40.  A second hearing was held before that ALJ on June 29, 2006, at which plaintiff – who, upon inquiry from the ALJ, chose to proceed with the hearing without a representative – appeared and testified, as did a lay witness and a different vocational expert. Tr. 503-27.  On August 18, 2006, the ALJ issued a decision, in which he again determined plaintiff to be not disabled, finding specifically that he was capable of performing other jobs existing in significant numbers in the national economy. Tr. 449-58.

On February 8, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's second decision, making it the Commissioner's final decision. Tr. 6; 20 C.F.R. § 416.1481.  Plaintiff appealed that decision to this Court, which on August 22, 2008, upon the stipulation of both parties, remanded the matter to the Commissioner to conduct further administrative proceedings. Tr. 463-68.  The Appeals Council in turn remanded the matter to another ALJ, who held a third hearing on March 4, 2009, at which plaintiff, this time represented by council, appeared and testified, as did a medical expert and a third different vocational expert. Tr. 469-72, 654-97.

On April 23, 2009, the second ALJ issued a decision, in which she determined plaintiff to

REPORT AND RECOMMENDATION - 2

be not disabled as well, finding specifically in relevant part:

    (1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since the date of his application;

    (2)    at step two, plaintiff had "severe" impairments consisting of spinal degenerative disc disease, a dysthymic disorder, post traumatic stress disorder, a personality disorder, and a somatoform disorder;

    (3)    at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    (4)    after step three but before step four, plaintiff had the residual functional capacity to perform sedentary work, with certain additional non-exertional limitations[3];

    (5)    at step four, plaintiff was unable to perform his past relevant work; and

    (6)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 433-45.  It does not appear from the record that the Appeals Council assumed jurisdiction of the case. 20 C.F.R. § 416.1484.  The ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.

On June 23, 2009, plaintiff filed a complaint in this Court seeking review of the second ALJ's decision. (Dkt. #1-#3).  The administrative record was filed with the Court on October 20, 2009. (Dkt. #17).  Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits for the following reasons:

    (a)    the ALJ erred in evaluating the medical evidence in the record;

    (b)    the ALJ erred in assessing plaintiff's credibility;

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3] "Exertional limitations" are limitations that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Non-exertional limitations," on the other hand, only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 3

1

(c)     the ALJ erred in evaluating the lay witness evidence in the record; and

2

(d)     the ALJ erred in finding plaintiff capable of performing other work existing
        in significant numbers in the national economy.

3

4

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the

5

reasons set forth below, recommends the ALJ's decision should be reversed and remanded to the

6

Commissioner for further administrative proceedings.

7

DISCUSSION

8

This Court must uphold the Commissioner's determination that plaintiff is not disabled if

9

10

the Commissioner applied the proper legal standard and there is substantial evidence in the

11

record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir.

12

1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as

13

adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v.

14

Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a

15

preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

16

Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one

17

rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler,

18

749 F.2d 577, 579 (9th Cir. 1984).

19

I.      The ALJ's Evaluation of the Medical Evidence in the Record

20

The ALJ is responsible for determining credibility and resolving ambiguities and

21

conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where

22

the medical evidence in the record is not conclusive, "questions of credibility and resolution of

23

conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.

24

1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the

25

Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether

26

REPORT AND RECOMMENDATION - 4

inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social

1   <u>Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d

2   947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An

3   examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining

4   physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute

5   substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at

6   830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

7       A.      <u>Dr. Malik</u>

8           In early December 2003, Dr. Muneeb Malik completed a physical evaluation form in

9   which he diagnosed plaintiff with moderately severe polyarthritis, resulting in a "[m]oderate"

10  impairment (i.e., resulting in "[s]ignificant interference with the ability to perform one or more

11  basic work-related activities."). Tr. 266.  Dr. Malik indicated that plaintiff would be unable to

12  perform sedentary work at least half-time in a normal day to day work setting for a period of 12

13  weeks. Tr. 267.  He further indicated that treatment was likely to restore plaintiff's ability to

14  perform at least half-time in a normal day to day work setting. <u>Id.</u>

15          The ALJ gave Dr. Malik's opinion "great weight," finding it to be "consistent with the

16  evidence of record and objective findings on examination," as well as plaintiff's "own reports of

17  his activities." Tr. 442.  Plaintiff argues Dr. Malik merely found plaintiff to be unable to perform

18  sedentary work for a period of 12 weeks.  But, most logically read, Dr. Malik's opinion indicates

19  that <u>other than</u> during that twelve-week period during which plaintiff was not able to perform

20  sedentary work <u>at least</u> half-time in a normal work setting, he would not be limited in his ability

21  to work.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or

22  she suffers from medically determinable impairment that has lasted or can be expected to last for

23  continuous period of not less than twelve months).  Accordingly, the ALJ found plaintiff to be

REPORT AND RECOMMENDATION - 6

even more limited than Dr. Malik appears to have found him to be.  The ALJ, therefore, did not

commit any error here.

        B.    <u>Dr. Smith and Dr. Morris</u>

        In his decision, the ALJ also considered the following medical opinion source evidence in

the record:

> In June 28, 2006 and January 3, 2007 psychological/psychiatric evaluations,
> Donna M. Smith, Psy.D. opined that the claimant's mental impairments
> caused marked limitations in the claimant's ability to exercise judgments and
> make decisions, and marked to severe limitations in the claimant's ability to
> respond appropriately to and tolerate the pressures of a normal work setting.
> Exhibits 21F, 24F/3-6.  In a November 24, 2008 psychological/psychiatric
> evaluation, Kevin N. Morris, Psy.D., opined that the claimant's mental
> impairments caused marked limitations in the claimant's ability to learn new
> tasks, exercise judgment and make decisions, and relate appropriately to co-
> workers and supervisors. Exhibit 26F.  As these opinions are inconsistent with
> other medical and opinion evidence in the record, I give them little weight.

Tr. 442; <u>see also</u> Tr. 303-06, 575-78, 581-84.  The undersigned rejects plaintiff contention that

the ALJ failed to identify the medical and opinion evidence he found to be inconsistent with the

opinions of Drs. Smith and Morris, as the ALJ specifically discussed such evidence immediately

before and after he made the above statement.  <u>See</u> Tr. 441-43.  In addition, the undersigned finds

without merit plaintiff's assertion that it was impermissible for the ALJ to reject the opinions of

Dr. Smith and Dr. Morris on the basis that they were inconsistent with other medical and opinion

evidence in the record.

        Where, for example, the opinion of an examining physician is based on independent

clinical findings, it is within the ALJ's discretion to disregard a conflicting opinion in another

examining physician's diagnosis. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  This is

what the ALJ properly did here.  Specifically, the ALJ gave greater weight to the opinions of

Keith Krueger, Ph.D., and Kathleen S. Mayers, Ph.D., who, based on their own independent

evaluations of plaintiff, found him to be much less severely limited. See Tr. 181-85, 227-32, 436-38, 440-42.  The undersigned, therefore, finds no error by the ALJ in so finding.  Nevertheless, given that for the reasons discussed below the ALJ erred in rejecting the findings and opinion of Melinda C. Losee, Ph.D., on remand the Commissioner shall re-consider the objective medical evidence in the record concerning plaintiff's mental impairments, including the opinions of Drs. Smith and Morris.

      C.    <u>Dr. Losee</u>

      The ALJ rejected as well the findings and opinion of Melinda C. Losee, Ph.D., for the following reasons:

> Dr. Losee indicated that interpersonally, the claimant had significant difficulty responding appropriately to supervision, coworkers and the public, and was not considered capable of dealing with normal work pressures or changes in a routine work setting. Exhibit 30F/4.  In formulating this opinion, it would appear that Dr. Losee relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained above and elsewhere in this decision, objective medical findings do not support the extent of limitation alleged by the claimant.  For these reasons, I give little weight to these opinions of Dr. Losee.

Tr. 442; <u>see also</u> 644-47.  The undersigned agrees with plaintiff that it was improper for the ALJ to discount Dr. Losee's opinions on the basis that she relied upon and accepted uncritically plaintiff's subjective complaints.  While it does appear Dr. Losee relied to at least some extent on those complaints – and while, for the reasons discussed below, the ALJ did not err in discounting plaintiff's credibility in regard thereto – Dr. Losee also conducted a detailed mental status evaluation, which on its own forms a proper basis for making a medical diagnosis. See <u>Clester v. Apfel</u>, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as results of a physical examination

provide basis for diagnosis of physical illness or injury).  As such, the ALJ did not provide valid

reasons for rejecting Dr. Losee's opinions.

II.      The ALJ's Assessment of Plaintiff's Credibility

        Questions of credibility are solely within the control of the ALJ. Sample, 694 F.2d at 642.

The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In

addition, the Court may not reverse a credibility determination where that determination is based

on contradictory or ambiguous evidence. Id. at 579.  That some of the reasons for discrediting a

claimant's testimony should properly be discounted does not render the ALJ's determination

invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter,

242 F.3d 1144, 1148 (9th Cir. 2001).

        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

The ALJ "must identify what testimony is not credible and what evidence undermines the

claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless

affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a

whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir.

2003).

        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

REPORT AND RECOMMENDATION - 9

1  symptoms. Id.

2       In this case, the ALJ found plaintiff to be not fully credible to the extent his "statements

3  concerning the intensity, persistence and limiting effects of these symptoms" conflicted with the

4  ALJ's assessment of plaintiff's residual functional capacity. Tr. 440.  In support of his credibility

5  determination, the ALJ noted that the objective medical evidence in the record was not consistent

6  with plaintiff's allegations of disabling symptoms. See Tr. 440-42.  A determination that a

7  claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and

8  convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir.

9  1998).  While a claimant's pain testimony may not be rejected "*solely* because the degree of pain

10  [or symptom severity] alleged is not supported by objective medical evidence," as discussed

11  below, the ALJ provided other legitimate reasons for discounting plaintiff's credibility in this

12  case. Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947

13  F.2d 341, 346-47 (9th Cir.1991) (*en banc*)) (emphasis added); Rollins v. Massanari, 261 F.3d

14  853, 856 (9th Cir.2001); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995); Fair v. Bowen,

15  885 F.2d 597, 601 (9th Cir. 1989).

16       The ALJ also properly discounted plaintiff's credibility because he did not follow one of

17  his treating physician's recommendations to attend physical therapy, even though that physician

18  indicated such therapy "would be helpful," which, the ALJ stated, undermined plaintiff's claims

19  "regarding the alleged severity of his spinal symptoms." Tr. 441; see also 543; see also Fair, 885

20  F.2d at 603 (failure to assert a good reason for not following prescribed course of treatment can

21  cast doubt on sincerity of claimant's subjective complaints).  Plaintiff argues the ALJ did not

22  consider the fact that he reported at the time being fearful his bones would not tolerate the

23  therapy, lacked energy due to an inability to sleep and was pressed for time because of issues

REPORT AND RECOMMENDATION - 10

1    with his mother. See Tr. 542-43.

2          But given that plaintiff is alleging severe, disabling impairments based in part on his

3    spinal condition, it is questionable at best as to whether these stated reasons for not following the

4    prescribed course of physical therapy are believable. See Fair, 885 F.2d at 603.  In any event, the

5    record indicates plaintiff has provided other equally questionable reasons for failing to follow up

6    on treatment that has been recommended for an impairment, which supposedly interferes to such

7    an extent with his ability to work. See, e.g., Tr. 544 ("Mr. Staggs has not attended PT as he got

8    the Rx wet and it was not legible.").  Indeed, as noted above, plaintiff was encouraged to attend

9    physical therapy, as it would have been "helpful for him[,] even though" he did not feel he would

10   be able to tolerate it. Tr. 543.  He also assured the same treatment provider that "this time" he

11   would begin the physical therapy "as requested," indicating he both was willing and felt himself

12   to be able to pursue such treatment. See Tr. 542.

13         The ALJ further discounted plaintiff's credibility on the basis of his reported activities of

14   daily living. See Tr. 441.  For example, the ALJ noted the record showed plaintiff reported being

15   able to care for his blind mother, prepare meals, shop in stores, read, watch films, do crossword

16   puzzles, spend time with family, go out alone, and occasionally dine out. Id.  Also as pointed out

17   by the ALJ, plaintiff "reported no restrictions in activities of daily living" when he saw Dr. Losee

18   in late June 2008, reporting further that he spent his day caring for his mother, and could shop,

19   cook, take care of his personal hygiene unassisted, and manage his finances independently. Tr.

20   441, 646.

21         To determine whether a claimant's symptom testimony is credible, the ALJ may consider

22   his or her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the

23   claimant "is able to spend a substantial part of his or her day performing household chores or

24

25

26

REPORT AND RECOMMENDATION - 11

other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be

"utterly incapacitated" to be eligible for disability benefits, however, and "many home activities

may not be easily transferable to a work environment." Id.  As the substantial evidence supports

the ALJ's determination that plaintiff's activities of daily living show an ability to perform work

at a level that is inconsistent with disability (see Tr. 228, 598, 602, 606, 609, 612-13, 615), the

ALJ did not err here.  Indeed, in late November 2008, plaintiff reported that he was "dedicated to

caring for his elderly mother which [was] a full time job for him now." Tr. 600.

> Lastly, the ALJ discounted plaintiff's credibility for the following reason:

> I also note that claimant is a convicted felon and Level III sex offender.
> Exhibits 28F/15, 30F/1; hearing testimony.  The claimant's criminal legal
> history may negatively impact his employability, and raises a question as to
> whether the claimant's continuing unemployment is actually due to medical
> impairments.

Tr. 441.  Plaintiff argues, and defendant concedes, that the existence of the above-noted criminal

history does not bear substantially on plaintiff's credibility.  The undersigned also agrees.  But as

pointed out by defendant, the mere fact that one of the ALJ's reasons for discounting plaintiff's

credibility was improper, does not render the ALJ's entire credibility determination invalid, as

long as the substantial evidence in the record supports that determination overall, as the evidence

does in this case. Tonapetyan, 242 F.3d at 1148.

III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

> Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

REPORT AND RECOMMENDATION - 12

1   link his determination to those reasons," and substantial evidence supports the ALJ's decision.

2   Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

3   694 F.2d at 642.

4       Plaintiff argues, correctly, that the ALJ erred in failing to mention or give any reason for

5   rejecting the testimony of plaintiff's mother regarding her observations of plaintiff's symptoms

6   and limitations. See Tr. 516-19.  Defendant argues no error was committed here, given that the

7   prior ALJ found plaintiff's mother to be not fully credible in his second decision. See Tr. 455.

8   As noted by plaintiff, though, it is the second ALJ's decision that is the final agency decision at

9   issue before this Court – not surprisingly in light of the fact that the second ALJ's decision is the

10  one for which judicial review was sought and that, as also noted by plaintiff, the Appeals Council

11  expressly stated it was vacating the prior ALJ's second decision – and, therefore, the findings of

12  the prior ALJ are not subject to consideration.  Accordingly, remand for re-consideration of the

13  testimony of plaintiff's mother is appropriate in this case as well.

14

15

16  IV.   The ALJ's Step Five Analysis

17      If a claimant cannot perform his or her past relevant work, at step five of the disability

18  evaluation process the ALJ must show there are a significant number of jobs in the national

19  economy the claimant is able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e).

20  The ALJ can do this through the testimony of a vocational expert or by reference to the

21  Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101;

22  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

23

24      An ALJ's findings will be upheld if the weight of the medical evidence supports the

25  hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant

26  v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore

must be reliable in light of the medical evidence to qualify as substantial evidence. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." <u>Embrey</u>, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

At the third, most recent hearing, the second ALJ posed a hypothetical question to the vocational expert, which contained substantially the same limitations as those the ALJ included in his assessment of plaintiff's residual functional capacity. <u>See</u> Tr. 439,[4] 691-92.  In response to that hypothetical question, the vocational expert testified an individual with those functional limitations – and who also had the same age, education and past work experience as plaintiff – would be able to perform other jobs existing in the national economy. <u>See</u> Tr. 692-94.  Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. <u>See</u> Tr. 443-44.  Specifically, the vocational expert and the ALJ found plaintiff could perform the jobs of document preparer, final assembler and addresser. <u>See</u> Tr. 444, 692-93.

Plaintiff argues the ALJ erred in finding him to be so capable, because the hypothetical

---

[4] As noted above, the ALJ determined plaintiff to have the residual functional capacity to perform sedentary work, finding more specifically in relevant part:

> **. . . The claimant can occasionally and frequently lift ten pounds.  The claimant can sit six hours in an eight hour day with normal breaks and can stand and/or walk two hours in an eight hour day with normal breaks.  The claimant can never climb ladders, ropes, or scaffolds.  The claimant can understand, remember, follow and focus on simple one and two step job instructions.  The claimant has the ability to learn new tasks to the extent they are limited to simple one and two step job instructions.  The claimant can make decisions and exercise judgment.  The claimant can perform those tasks routinely.  The claimant would function best in a job in which he had limited interaction with supervisors and coworkers.  The claimant could accept directions and instructions and then work independently with minimal interaction.  The claimant should have minimal (no more than occasional) interaction with the public.**

<u>Id.</u> (emphasis in original).

REPORT AND RECOMMENDATION - 14

question posed to the vocational expert did not accurately reflect all of his functional limitations. The undersigned does find that because, as discussed above, the ALJ erred in evaluating both the opinion of Dr. Losee and the testimony of plaintiff's mother, it is not entirely clear as to whether the hypothetical question contains all of the functional limitations supported by the substantial evidence in the record.  Accordingly, remand for further administrative proceedings on this basis is proper.

Plaintiff next argues the ALJ erred in not obtaining a reasonable explanation for the conflict between the vocational expert's testimony and the descriptions of the jobs the vocational expert identified contained in the Dictionary of Occupational Titles ("DOT").  The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  To that end, the ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ must "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The ALJ also is required to explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

The conflict in this case, plaintiff asserts, comes in regard to the level of reasoning the DOT states is required to perform the jobs of document preparer and final addresser.  The DOT describes the job of addresser as requiring Level 2 reasoning (see DOT 209.587-010), whereas it describes the job of document preparer as requiring Level 3 reasoning (see DOT 249.587-018). A conflict between the vocational expert's testimony and the DOT exists here, plaintiff argues,

REPORT AND RECOMMENDATION - 15

because the ALJ limited plaintiff to simple, one to two step reasoning in the hypothetical

question he posed, which he asserts is equivalent to Level 1 reasoning, thereby preventing him

from being able to perform either job.

The DOT defines Level 1 through 3 reasoning as follows:

LEVEL 3

Apply commonsense understanding to carry out instructions furnished in
written, oral, or diagrammatic form. Deal with problems involving several
concrete variables in or from standardized situations.

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved
written or oral instructions. Deal with problems involving a few concrete
variables in or from standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step
instructions. Deal with standardized situations with occasional or no variables
in or from these situations encountered on the job.

DOT, Appendix C.   In the hypothetical question he posed to the vocational expert, the ALJ did

state that plaintiff had "the ability to learn new tasks to the extent" they involved "simple, one

and two-step job instructions," that he could "perform those tasks routinely" and that he could

"make decisions and exercise judgment." Tr. 691.  Thus, while plaintiff focuses on the "simple,

one and two-step job instructions" language – and the similarity of this particular language to

that contained in the DOT's definition of Level 1 reasoning – it is clear the ALJ essentially was

limiting plaintiff to being able to perform simple, routine work tasks.

On the surface, the similarity in language noted above would indicate there is some merit

to plaintiff's argument.  Upon closer analysis, however, it is clear the ALJ's limitation to simple,

REPORT AND RECOMMENDATION - 16

routine work is more commensurate with Level 2 reasoning.[5]  Several courts have found Level 2 reasoning to be consistent with the ability to do simple and routine work tasks. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (Level 2 reasoning more consistent with limitation to simple, routine work tasks); Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D. Cal. 2005) (limitation to simple and repetitive tasks closer to Level 2 reasoning); Flaherty v. Halter, 182 F.Supp.2d 824, 850-51 (D. Minn. 2001) (Level 2 reasoning did not conflict with limitation to work involving simple, routine, repetitive, concrete, and tangible tasks).

It is true that at least one court appears to disagree with the position taken in the above decisions. See Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that claimant limited to following only simple instructions can engage in full range of sedentary work because many unskilled jobs in that category require reasoning levels of 2 or higher).  However, the undersigned finds more persuasive the discussion of this issue provided by the United States District Court for the Central District of California:

> This leaves the question of whether the vocational expert's opinion contradicted the DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding limiting Meissl to "simple, repetitive" tasks. The Court finds that it does not.
>
> As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT at 1011. In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or

---

[5] The undersigned does agree, though, that a job with a reasoning Level of 3 is incompatible with a limitation to simple and routine work. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding ability to perform simple and routine work tasks to be inconsistent with demands of Level 3 reasoning); see also Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that claimant limited to following only simple instructions could engage in full range of sedentary work, because many unskilled jobs in that category require reasoning levels of two or higher).  As such, the ALJ erred in finding plaintiff to be capable of performing the job of document preparer.

REPORT AND RECOMMENDATION - 17

diagrammatic form" and deal "with problems involving several concrete variables ...." DOT at 1011. The middle ground between these two points is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.

A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.

Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); see also 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also

REPORT AND RECOMMENDATION - 18

ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir.2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001).

Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D.Cal. 2005).

This case is somewhat different than the situation facing the district court in Meissl. As discussed by the district court above, in Meissl the ALJ limited the claimant to simple and repetitive tasks, whereas the ALJ in this case limited plaintiff to understanding, remembering, following and focusing on simple, one and two-step instructions, performing such tasks routinely and making decisions and exercising judgment. Despite the ALJ's use of the one and two-step

REPORT AND RECOMMENDATION - 19

1   language in this case, as the Meissl court noted, Level 1 reasoning is "the lowest rung on the

2   development scale," which involves "fairly limited reasoning required to do the job," and is to be

3   applied to "the most elementary of occupations," with "only the slightest bit of rote reasoning

4   being required." Id. at 984.

5       It is true that in finding the claimant in that case could perform Level 2 reasoning, the

6   district court in Meissl focused on the ALJ's finding that the claimant could do "not just simple

7   tasks but also ones that had some element of repetitiveness to them."  While it also is true that

8   the ALJ here made no such finding regarding repetitiveness, the ALJ did find plaintiff was able

9

10  to make decisions and exercise judgment.  The ALJ also gave no indication that he intended to

11  limit plaintiff to those type of jobs requiring "only the slightest bit of rote reasoning."  Even if

12  the ALJ had so intended, furthermore, the ALJ still properly found the job of final assembler,

13  which plaintiff concedes has a reasoning Level of 1 (see DOT 713.687-018), exists in significant

14  numbers in the national economy.

15

16      At the third, most recent hearing, the vocational expert testified that there were 42,000

17  final assembler jobs in the national economy and 800 such jobs in the State of Washington. Tr.

18  693.  Plaintiff argues it is "beyond cavil" that a single occupation can be found to constitute a

19  significant number of jobs, given also that the vocational expert did not identify a significant

20  number of jobs in the region where he lives or in several other regions of the country. See (Dkt.

21  #18, p. 14).  The law dealing with this issue, however, does not support plaintiff's argument.

22  Work is considered to exist in the national economy "when there is a significant number of jobs

23  (in *one* or more occupations) having requirements" which the claimant is "able to meet" with the

24  claimant's "physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b)

25  (emphasis added); see also Barker v. Secretary of Health and Human Services, 882 F.2d 1474,

26

1478 (9th Cir. 1989) ("'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.").

The Ninth Circuit Court of Appeals "has never clearly established the minimum number of jobs necessary to constitute a 'significant number.'"  Barker, 882 F.2d at 1478.  It is true the Ninth Circuit also has stated that "[i]n looking toward the pool of jobs existing in the national economy, Congress did not intend to foreclose a claimant from disability benefits on the basis of the existence of *a few isolated jobs*."  DeLorme v. Sullivan, 924 F.2d 841, 851 (9th Cir. 1990) (citation omitted) (emphasis added).  The Court of Appeals also went on to state in DeLorme that "when vocational experts identify several job categories and thousands of jobs performable in the state by the claimant," it has "repeatedly found substantial evidence of performable jobs."  Id.; see also Coletta v. Massanari, 163 F.Supp.2d 1101, 1106 (N.D.Cal. 2001).  However, other courts "have agreed . . . that a 'significant' number was fairly minimal."  Franklin v. Apfel, 8 F.Supp.2d 227, 234 (W.D.N.Y. 1998).

For example, the Eighth Circuit Court of Appeals has found as few as 200 jobs at the state level and 10,000 nationally to be sufficient to constitute a significant number of jobs.  See Johnson v. Chater, 108 F.3d 178, 180 n.3 (8th Cir. 1997).  In addition, although the Ninth Circuit in Barker held 1,266 jobs in the local economy was a significant number, it did so while noting that "[d]ecisions by district courts within this circuit" were "also consistent with" this number, including that by the district court in Uravith v. Heckler, 1986 WL 83443 (D.Ariz.) (finding that although 60 to 75 percent of 500-600 relevant positions in local economy required experience claimant did not have, range of remaining 25 to 40 percent – or 125 to 240 – of those positions constituted significant number).  Barker, 882 F.2d at 1478-79.

REPORT AND RECOMMENDATION - 21

1    As noted above, the phrase "work which exists in the national economy" is defined to

2    mean work existing "in significant numbers *either* in the region where" the claimant "lives *or* in

3    several regions of the country." 42 U.S.C. § 423(d)(2)(A)) (emphasis added); <u>see also</u> 20 C.F.R.

4    § 416.960(c)(1) ("Any other work (jobs) that you can adjust to must exist in significant numbers

5    in the national economy (*either in the region where you live or in several regions in the*

6    *country*.") (emphasis added).  Thus, regardless of region or regions considered, the "appropriate

7    focus" at step five of the sequential disability evaluation process is, as noted by the Eleventh

8    Circuit, the national, not the local, economy. <u>Allen v. Bowen</u>, 816 F.2d 600, 603 (11th Cir. 1987)

9    (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 336 (1976)).  As succinctly put by one district court:

> Although the vocational expert identified only "a single job, the Social
> Security Act affords benefits only to those who cannot 'engage in any other
> kind of substantial gainful work which exists in the national economy[.]'"
> *Renna v. Barnhart*, 2007 WL 602395, at *5 (E.D.N.Y. Feb. 21, 2007) (citing
> 42 U.S.C. § 432(d)(2)(A) (emphasis added) & *Dumas v. Schweiker*, 712 F.2d
> 1545, 1553 (2d Cir. 1983) (affirming step-five determination based on
> evidence of only one job).  Furthermore, the [Social Security] Regulations
> state that the Commissioner is to consider whether significant numbers exist
> "either in the region where [the claimant lives] or in several other regions of
> the country" but the focus need not be on the immediate area in which an
> individual lives. 20 C.F.R. §§ 404.1566(a) & 416.966(a) (emphasis added).
> Thus, the vocational expert's testimony stating that there were approximately
> 100,000 jobs of this nature in the national economy and 125 locally
> constitutes a significant number. *Id.* at §§ 404.1566(b) & 416.966(b) (cited in
> *Wright v. Chater*, 969 F.Supp. 143, 148 (W.D.N.Y. 1997)); *see also Dumas v.
> Schweiker*, 712 F.2d at 1549 (holding that 150 jobs in the region and 112,000
> jobs in the national economy constituted a significant number of jobs);
> *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (finding that 200 jobs was a
> significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)
> (stating that 174 jobs in the local area and 80,000 nationwide constituted a
> significant number). . . .

<u>Bull v. Commissioner of Social Security</u>, 2009 WL 799966 *6 (N.D.N.Y.).

Accordingly, even if credible evidence indicating the lack of jobs in the particular

geographic area is presented, "failure to disprove the existence of . . . jobs on a national scale

REPORT AND RECOMMENDATION - 22

would leave the ALJ's [step five] finding intact." Allen, 816 F.2d at 603.  No such evidence, however, has been presented in this case.  Nor does the undersigned find decisions from other courts considering this issue, either in this circuit or others, necessarily supports a contention that 200 jobs in the region at issue here – i.e., in the State of Washington – or 42, 000 in the national economy, are insufficient to constitute a significant number for step five purposes.  As discussed herein, other courts have upheld numbers of jobs similar to, or even lower than, those testified to by the vocational expert in this case.  As such, the ALJ did not err in his step five analysis on this basis, though remand is still required for the reasons set forth above.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 18, 2010**, as noted in the caption.

DATED this 24th day of May, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23